THE MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY v. THE GOWRIE & NORTHWESTERN RAILWAY COMPANY, Appellant.

Railroads: INTERLOCKING CROSSING: COST OF MAINTENANCE.  Where one railroad company whose tracks cross another at grade has been compelled to interlock the crossing, the company whose tracks are crossed may be required to contribute to the cost of maintaining and operating the interlock.

*Appeal from Clay District Court.*—HON.  J.  D.  BAILIE, Judge.

TUESDAY, APRIL 12, 1904.

THE plaintiff owned and operated a railroad in Clay county, which the defendant desired to cross with its road, whereupon the plaintiff instituted this proceeding under section 2063 of the Code to compel the defendant to interlock the crossing.   There was a judgment requiring the defendant to construct and forever maintain an interlocking apparatus as prayed, at its own sole cost and expense.   The defendant appeals.—*Reversed.*

*Carroll Wright* and *G. H. Martin* for appellant.

*Albert E. Clark* and *F. H. Helsell* for appellee.

SHERWIN, J.—While this case was pending it was held by this court in *M. & St. L. R. Co. v. C. R., G. & N. W. R. Co.,* 114 Iowa, 502, that the cost of installing the interlock provided for in section 2063 of the Code must be paid by the crossing company.   Thereafter the parties hereto, by amend-

ment of pleadings and by stipulation, made a case which presented to the district court but one question, which is concisely stated by the appellee to be this: "When one railroad company crosses with its tracks those of another company at grade, and has been required to interlock the crossing pursuant to the provisions of section 2063, Code of 1897, must the company making the crossing be compelled to pay the entire cost of maintaining and operating the interlock, or can the company whose tracks are crossed be compelled to contribute to the expense?" Manifestly, the answer to the question propounded must be found in the statute itself. In the case to which we have already called attention we set out sections 2060, 2061, and 2062, all of the statute relating to interlocking requirements, and considered them in determining the construction which should be given to the section now under consideration as applied to that case, and it is not necessary to again give the section in full. It was said of these sections in the case. *supra*. "It must be observed that these three sections relate to crossings already established; the first, to where interlocking systems are established by agreement between the parties, and the second to cases where the crossing has already been made, and one of the companies desires to unite with others in protecting it. Section 2063 is the only one which applies where one company desires to construct a new track across an existing one." The latter section is as follows: "In case one railway company desires to cross with its tracks those of another at grade, and such companies cannot agree to the terms thereof, the company desiring to cross shall, upon the application of the company whose track it is desired to cross, in a proceeding instituted as provided in the two preceding sections, be compelled to interlock such crossing, and the court therein shall make such orders and decrees as may be required to secure public safety and the preservation of the properties of the roads, and prescribe the terms upon which such crossing shall be maintained after being made. The provisions of this and the two preceding sections shall not apply to side tracks." It is a familiar rule of statu-

tory construction that each and every part of the statute shall be given force and effect, if possible. The provision in this section which says that the court shall "prescribe the terms upon which such crossing shall be maintained after being made" is plain and self-explanatory, and applies only to the crossing provided for in said section. And if the crossing which is to be maintained thereunder is an interlock crossing, with its necessary apparatus, there can be little question as to the intent and meaning of the statute. It is argued, however, that the crossing therein contemplated is the actual crossing, and not the interlock. But we think that the word "crossing," as used in the interlocking statute, cannot be given such restricted meaning without entirely disregarding the connection in which it is used. A careful analysis of this section alone precludes such a construction. It says that the crossing company shall be compelled to "interlock such crossing," and that the court shall fix the terms "upon which such crossing shall be maintained;" clearly, as it seems to us, providing for the maintenance of the interlocked crossing. Moreover, if the appellee's contention be true, section 2065, which provides for a modification of any decree relating to the expense of maintaining interlocking crossings upon cause shown at any time in the future, would be meaningless. We are of the opinion that the section provides for the maintenance of an interlocking system. And such was the view of the court, and it was so expressed in the case cited *supra*, though the question was not before us for decision in that case. In construing section 2064, we there said: "Section 2064 must be construed with reference to the other sections. As applied to one, it has its peculiar and appropriate meaning, and as applied to another a somewhat different, though no less appropriate, significance. In other words, it is the item or items of cost authorized by the particular sections which are apportionable. Under section 2063 they are manifestly the costs of the proceedings and maintaining the crossing after

the interlocking system is established." We are satisfied with this construction of both sections 2063 and 2064.

A part of the appellee's argument is devoted to a discussion of the constitutionality of the statute in question, but we do not deem it necessary to enter this field. It is conceded that the interlock is for the exclusive benefit of the old company, and is not a police regulation for the protection of the public. If this be true, it follows that the old company may or may not invoke the aid of the statute for the protection of its financial interests. If it does not demand the interlock, it must then obey the police statute, which requires trains to stop for grade crossings. Code, section 2073. It may take its choice, but, if it elects to require the crossing company to install an interlock, and thus invokes the protection and aid of the statute, it cannot question the constitutionality of the terms upon which it may have such aid and protection. If the conditions imposed by the statute are not satisfactory, the company is not bound to accept them, or to put the statute in operation; but if it avails itself of the provisions of the statute which are beneficial to it, good conscience and fairness demand that it shall make no attack upon the conditions which are imposed by the statute, and which are an inseparable part of it. *Daniels v. Tearney,* 102 U. S., 421 (26 L. Ed. 187); *Ferguson v. Landram,* 5 Bush, 230 (96 Am. Dec. 350); *Lee v. Tillotson,* 24 Wend., 337 (35 Am. Dec. 624); *Van Hook v. Whitlock,* 26 Wend., 43 (37 Am. Dec. 246.)

The judgment is REVERSED.