## *In re* ALEXANDER AVE.

*(Supreme Court, General Term, First Department.   February 18, 1892.)*

1. OPENING STREETS—DEPOT GROUNDS—RIGHTS OF CITY.
   Lands acquired by a railroad company by purchase instead of condemnation proceedings, for terminal facilities within city limits, may be taken by the city for street purposes without the aid of special legislation.

2. SAME—CONSENT OF RAILROAD.
   Laws 1882, c. 410, (Consolidation Act, § 957,) which provides that no street not laid out before May 23, 1873, shall be constructed through depot grounds in Wards 23 and 24 unless by consent of the company, recognizes the right of the city to open streets through depot grounds laid out before that date in such wards, without the consent of the railroad.

3. SAME—LAND LYING UNDER WATER.
   Under Laws 1874, c. 604, § 1, conferring on the commissioners of the department of public parks of New York city the power to lay out streets, roads, etc., over lands within the city of New York belonging to the state, the city has power, in laying out a street, to take, on proper condemnation proceedings, land lying under water along the shore of Harlem river, outside the exterior line established by law at the line of solid filling.

4. SAME—DAMAGES—BULK-HEADS.
   An award of damages for land along a river taken for street purposes will include damages for bulk-heads erected by the owner, they being mere appurtenances to the land.

5. SAME—ASSESSMENTS—FRONTAGE.
   The lands of the railroad company, being the only property receiving a new frontage by the opening of the street, were properly assessed with a greater proportion of the expense thereof than adjacent property.

6. SAME—STREETS OF FIRST CLASS—OBJECTION BY MAJORITY OF OWNERS.
   New York City Consolidation Act, § 990, which provides that the report of the commissioners of estimate and assessment in street opening proceedings shall not be confirmed in case of objection by a majority of the abutting owners, does not apply to proceedings to open streets of the first class,—that is, those needed for the convenience of the general public.

Appeal from special term, New York county.

Proceedings for the opening of Alexander avenue in the city of New York between Third avenue and Harlem river. From an order confirming the report of commissioners of estimate and assessment the Harlem River & Portchester Railway Company appeals. Affirmed.

Argued before VAN BRUNT, P. J., and LAWRENCE and O'BRIEN, JJ.

*Page & Taft, (Henry H. Anderson,* of counsel,) for appellant. *William H. Clark, (Carroll Berry,* special counsel,) for respondent.

VAN BRUNT, P. J. The Harlem River & Portchester Railway Company some 20 years ago acquired a large tract of land by purchase, chiefly between high and low water, upon the northerly side of Harlem river. The land under water had been filled in, and a bulk-head constructed along the entire front, extending several hundred feet upon the Harlem river, and the land appropriated by said railroad for its business. It appears that prior to the commencement of these proceedings Alexander avenue had been informally opened from Third avenue to the premises of the appellant, and that this proceeding was commenced for acquiring the title to said avenue, and opening the same from Third avenue to the Harlem river, the said avenue having been designated as a first-class street by the department of public parks; and in the proceeding the land to be taken was specifically and expressly described. Such proceedings were thereupon had that commissioners of estimate and assessment were appointed, who made their report, and upon a motion to confirm the report objections were filed in reference to the method of assessment, and also upon the ground that certain bulk-head rights were not valued, and certain property was taken, and assessments laid therefor, which should not have been included in the assessment. These objections being overruled, this appeal was taken. It is now urged that these proceedings were *ultra*

*vires* the mayor or aldermen and commonalty, without some act authorizing the laying out of such avenue through the premises of the objectors, because the land had been appropriated for terminal facilities in connection with the railroad to be used as a depot for the landing of passengers and freight, and for the transportation of passengers and freight therefrom. Upon an examination of the record we fail to find that this objection to the proceedings was in any way made a part of this record prior to the time of this appeal. It is not stated among the objections filed to the confirmation of the report. It does not appear to have been urged at the time of the appointment of the commissioners, and might very well be held to be waived under the rule laid down in *Re Cooper*, 93 N. Y. 507. But, if this be not so, the land owned by the railroad company was originally acquired by purchase, and not by condemnation proceedings, and is now held under such purchase in fee-simple absolute, and may be devoted by it, if it sees fit, to any use it may desire, in the same way as would a private individual. Besides, in section 957 of the consolidation act[1] it is provided that no street not laid out before May 23, 1873, shall be constructed through or upon the depot or station grounds of any railroad or branch of the same then operated by steam-power within the said wards (Twenty-Third and Twenty-Fourth) unless with the consent of said railroad company. This is a clear recognition upon the part of the legislature of a right in the city in respect to those streets laid out prior to May 23, 1873, to open them through depot or station grounds. And, if any express legal authority were needed, it seems to be found in this enactment, the avenue in question being laid out before the period named.

It is also urged that the commissioners erred, and the proceeding is illegal, in that there is embraced in the land for which awards were made land which does not and cannot form part of said street, but is a part of the Harlem river, outside of the exterior line established by law at the line of solid filling,— land lying under water, and belonging to the people of the state of New York, over which neither the mayor, nor any party representing the mayor, etc., has jurisdiction. It is conceded in the objection that the land in question belongs to the people of the state of New York, and therefore they have clearly the right to authorize the taking of any such land for the purposes of a street. By chapter 604 of the Laws of 1874, § 1, the commissioners of the department of public parks have conferred upon them the exclusive power to lay out, survey, and monument all streets, roads, avenues, public squares, and places embracing the *locus* in question. Now, if the department of public parks had the power conferred upon them by the people of the state of New York to lay out a street over this land belonging to the state, it certainly was clearly intended that, upon proper proceedings being taken, such laying out might be made effectual by condemnation of the land; section 963 of the consolidation act expressly authorizing the mayor, etc., to acquire the land of any person or persons or body politic or corporate. It would appear, therefore, that there was ample authority for the proceeding. It is said in the brief of the counsel for the respondent that the title of this land has been conveyed to the mayor, etc. We do not find any evidence of this fact in the record, but that seems to be immaterial, in view of the condition of the legislation.

It is further urged that the commissioners awarded nothing to the appellant for its bulk-head rights; but it appears from the evidence that an award was made for all the land which was taken, and the bulk-head rights were mere appurtenances to the land which abutted upon the bulk-head, and gave such land its value, for which compensation has been made. It is also urged that the assessment for benefit on the lands of the objectors is wholly and greatly disproportionate in amount to the assessments laid on lands similarly

[1] Laws 1882, c. 410.

situated, so much as to work serious injustice, which the appellate court should cure. As already stated, the avenue in question had been opened informally for a considerable portion of its length, and no awards (except a nominal one of one dollar) were made for the land included in its limit until it reached the premises of the appellant. Thereupon a substantial award was made to the appellant for the land which had been taken, and this award was assessed back on the other land owned by it, because it was the only property which received the benefit of a new frontage, all the other property possessing a frontage upon the existing avenue, for the taking of the land in which it is fair to presume they had contributed. It further appears that in the making up of their assessment the commissioners assessed, in the first place, the costs and expenses of the proceedings, exclusive of the awards for lands and buildings, at so much per lineal foot throughout the entire extent of the avenue, from the Harlem river to Third avenue. They then assessed one-third of the awards made for the buildings upon the city, and the remainder they apportioned upon the property benefited throughout the entire extent of the avenue. They then, upon the property benefited in each block, assessed the amount of the awards for the land taken for the avenue in that block. Thus each lot paid for half the street in front, and the land upon the whole avenue paid the other expenses of the proceeding. The claim that the opening of the avenue to the river was a benefit to the other property, and that, therefore, it should be assessed, has no foundation in fact, because, if the whole avenue had been opened from Third avenue to the river, and awards had been made for the land for the whole of the avenue, the result to these appellants would have been precisely the same, their property deriving benefit as well as the other property along the avenue. It is also urged that the court erred in confirming the report against the objection of a majority of the persons who appeared by the report to be interested. This objection is founded upon section 990 of the consolidation act, which it is claimed directs that in such case the court shall order the proceedings to be discontinued. It seems to us that this objection cannot prevail, and that an examination of the legislation upon this subject shows that it was not the intention of the legislature to permit the discontinuance of the proceedings to open avenues of this character. Section 673 provides that, where maps or plans are prepared and filed in accordance with the provisions of the preceding section, the department of public parks shall designate each street, avenue, or road as belonging to one of three classes. A street of the first class shall be such as in the judgment of the commissioners is or may be needed for the convenience of the general public, either as a main route of travel or for drainage. Streets of this class may be opened by the board or department of the city government having control of such avenue, whenever, in their opinion, the interests of the public demand such opening. Streets of the second and third classes are to be opened at the option of the owners. And it is evident that it is to these two classes that section 990 referred,—to proceedings to open, which may be discontinued where a majority in amount of the owners object to further proceedings. But it would be idle to give power to the department of public parks to open a street of a certain character whenever, in their opinion, the interests of the public demand such opening, and to compel the discontinuance of the proceedings upon the objection of the property owners. The object of classifying these streets was to give notice as to the streets which it was claimed by the department of public parks were needed for the convenience of the general public, and that as to such streets there should be an absolute power to open whenever, in their opinion, the interests of the public demanded such opening. We think, therefore, that no error was committed in the order confirming the report, and the same should be affirmed, with costs. All concur.